IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CORPORATE EMPLOYMENT RESOURCES, INC., et al., <br><br> Plaintiffs, <br><br> v. <br><br> JAMES E. BOONE and VOLT INFORMATION SERVICES, INC., <br><br> Defendants. | ) ) ) ) ) ) ) Civ. No. 11-408-SLR ) ) ) ) ) ) |

**MEMORANDUM ORDER**

At Wilmington this 4th day of November, 2011, having reviewed the various motions that are pending in the above captioned case, and the papers filed in connection therewith;

IT IS ORDERED that defendants' motion to dismiss, stay or transfer (D.I. 9) is granted in part and denied in part, as follows:

1. **Background.** The dispute between the parties revolves around the employment of defendant James E. Boone ("Boone"), a resident of the State of Georgia, as the President and CEO of plaintiff Corestaff Support Services, Inc. ("Corestaff"), a California corporation with its principal place of business in Texas.

2. In connection with his employment at Corestaff, Boone entered into an employment agreement and a non-compete agreement. (D.I. 15, exs. C and D) Both include choice of law provisions - that of the State of Delaware.

a. The employment agreement contains a confidentiality provision, providing in part that Boone must not use any "Confidential Information" for either his benefit or the benefit of any third party for a period of two years after his last day of employment; "Confidential Information" was defined as "information regarding the Company Group that is not generally available to the public." "Company Group" was defined as Corestaff, "its parent and its direct and indirect subsidiaries." (D.I. 15, ex. D at )

b. The non-compete agreement included several restrictive covenants, including the following:

> In consideration of the consummation of the transaction contemplated by the Employment Agreement, Employee covenants and agrees that during his employment and for a period of one (1) year after his employment ends ("the Restricted Period"), Employee shall not do any one or more of the following, directly or indirectly:
>
> (a) engage or participate in the Business, as an owner, partner, member, stockholder, independent contractor, employee, agent, adviser, consultant or . . . otherwise in the Territory; . . . .

"Business" was defined broadly as the "business of staffing services, including providing full-time, direct hire, temp-to-hire and temporary employment services, staffing company management and consulting services and related services and any other business in which the Company Group is engaged or pursuing during the term of this Agreement . . . ." "Company Group" was again defined as Corestaff, "its parent and its direct and indirect subsidiaries." "Territory" was defined as "each State of the United States and anywhere else in the world where [Corestaff] engages or has taken substantial steps to engage in the Business . . . ." (D.I.15, ex. C at 1-2)

3. In addition to Corestaff, plaintiffs include the following related companies:

Corporate Services Group Holdings, Inc. ("CSGH"), Corporate Employment Resources, Inc. ("CER") and Guidant Group, Inc. ("Guidant"), Delaware corporations with their principal places of business in Texas; Impellam Group, plc ("Impellam"), a United Kingdom public limited company; and The Corporate Services Group, Ltd. ("CSG"), a limited company organized under the laws of England and Wales. (D.I. 1, ex. A at §§ 3-8)

4. According to plaintiffs, the "U.S. Companies comprise a multi-entity organization that operates as a whole, and offer services including staffing, recruiting, outsourcing, thrid-party management of contract staffing, talent management, and consulting, among other things." (*Id.* at § 13) As noted, Boone was hired to serve as the President and CEO of Corestaff. In addition, he served as President and CEO and as a director of CSGH and CER, and was the "highest ranking officer and a Director of Guidant." (*Id.* at §12) Although the corporate structure of these related companies is not always described consistently in the papers, plaintiffs in their complaint assert that Corestaff, CER and Guidant are all wholly owned subsidiaries of CSGH; CSGH, in turn, is a wholly owned subsidiary of CSG; CSG is a wholly owned subsidiary of Impellam. (*Id.* at ¶¶ 3-8)[1]

---

[1] I note in this regard that both the employment and non-compete agreements describe Corestaff as a Delaware corporation, while the complaint filed in this case states that Corestaff is a California corporation. (*See* D.I. 1, ex. A at § 6; D.I. 15, ex. D at 1) In addition to the issue as to whether Corestaff is a Delaware or a California corporation, Corestaff is described as a wholly-owned subsidiary of Impellam (D.I. 15, ex. D at 1), a wholly-owned subsidiary of CSGH (D.I. 1, ex. A at ¶ 6), as being part of the "CORESTAFF Group" including CER and Guidant (D.I. 15, ex. D at 1), and as being the "Company" in the "Company Group" that includes Corestaff, "its parent and its direct and indirect subsidiaries" (D.I. 15, ex. C at 1).

5. **Dueling litigation.** By letter dated April 11, 2011 and directed to the Chairman of Impellam, Boone resigned his employment with Corestaff effective June 10, 2011. (D.I. 10, ex. 2) Upon his resignation, Boone planned to commence employment with defendant Volt Information Sciences, Inc. ("Volt"), a New York corporation. To that end, Boone and Volt commenced litigation in the United States District Court for the Northern District of Georgia on April 22, 2011, seeking a declaration that the restrictive covenants contained in the non-compete agreement were unenforceable as a matter of law and seeking injunctive relief to prevent Corestaff and Impellam from enforcing such. *See Boone v. Corestaff Support Services, Inc.*, Civ. No. 11-1175-RWS ("the Georgia action"). (D.I. 10, ex. 1) Plaintiffs at bar commenced the instant litigation on May 6, 2011, by filing a complaint in the Court of Chancery of the State of Delaware alleging that Boone was violating his fiduciary duties and contractual obligations owed to plaintiffs by procuring employment with Volt, a direct competitor. In this regard, plaintiffs assert that, "[d]ue to the nature of Boone's high-ranking positions and prior role in Impellam's United States operations, it would be impossible for Boone to avoid using his vast knowledge of [plaintiffs'] confidential information in connection with his role at Volt." (D.I. 1, ex. A at § 39) Defendants removed the Delaware litigation to this court on May 10, 2011. Plaintiffs followed with a motion to enjoin Boone from taking employment with Volt, in contravention of the non-compete agreement. (D.I. 3)

6. Since the commencement of litigation between the parties, Judge Story in the Georgia action has determined that the restrictive covenants in the non-compete agreement are unenforceable under Georgia public policy and may not be enforced against Boone. Judge Story has granted an injunction preventing CORESTAFF from

prosecuting an action against Volt or Boone, arising from his employment with Volt. (D.I. 34, ex. A) Judge Story acknowledged that Corestaff and Impellam may have causes of action for breach of contract and breach of fiduciary duties, "if Boone has retained confidential information" and, therefore, declined to grant an injunction "preventing Corestaff from prosecuting an action against Volt or Boone, arising from his employment at Volt." (*Id.*)

7. Plaintiffs at bar are still seeking in this court a temporary restraining order and preliminary injunction enjoining Boone from working for Volt, with the likely result that Boone will use for the benefit of (and disclose to) Volt plaintiffs' confidential and proprietary information, in violation of his fiduciary duties "and a valid and enforceable" non-compete agreement. (D.I. 36)

8. **First-filed action.** "Under the first-filed rule, in cases of federal concurrent jurisdiction involving the same parties and issues, the court of first-filing must proceed to decide the matter" unless exceptional circumstances exist. *Zelenkofske Axelrod Consulting, L.L.C. v. Stevenson*, 1999 WL 592399, at *2 (E.D. Pa. Aug. 5, 1999) (citing *E.E.O.C. v. Univ. of Pa.*, 850 F.2d 969, 976-79 (3d Cir. 1988)). While this may ordinarily involve dismissal of the second-filed action, transfer, under 28 U.S.C. § 1404(a), may also be appropriate where the first-filed rule applies.[2] *Freedom Mortg.*

---

[2]As the court explained in *Freedom Mortgage Corp. v. Irwin Financial Corp.*:

> 28 U.S.C. § 1404(a) provides that venue may be changed to any other district where the action may have been brought out of convenience to the parties or witnesses, or in interests of justice. One of the purposes of the power to transfer under § 1404(a) is to avoid the "wastefulness [of] time, energy and money" of simultaneously pending litigation in different district courts over a single transaction or event.

5

*Corp. v. Irwin Financial Corp.*, 2009 WL 763899, at *5-6 (D. Del. Mar. 23, 2009); *Koresko v. Nationwide Life Ins. Co.*, 403 F. Supp. 2d 394, 403 (E.D. Pa. 2005).

9. I find that the Georgia action was the first-filed action, and that defendants did nothing untoward in filing litigation in Georgia, where Boone resides and was employed, to seek judicial review of the enforceability of the non-compete agreement. I note that the employment and non-compete agreements had choice of law provisions, not forum selection clauses, and that "[a] choice of law clause can be held 'unreasonable' if, *inter alia*, 'enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or judicial decision.'" *Organ v. Byron*, 435 F. Supp. 2d 388, 392 (D. Del. 2006) (citation omitted). Moreover, "in making a choice of law determination, Delaware courts must . . . consider 'the public policy of the jurisdiction in which the actions of the [tortfeasor] cause harm," *id.*, in this case arguably both Georgia and Delaware.[3] Therefore, to the extent that plaintiffs at bar are seeking the opportunity to relitigate this issue in Delaware, I decline their request, dismiss the complaint to the extent this relief is sought, and deny the pending motions seeking that

---

2009 WL 763899, at *5 (D. Del. Mar. 23, 2009) (internal quotation and citation omitted). As the Third Circuit explained in *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3rd Cir. 1995), when considering motions to transfer under § 1404(a), courts are simply called upon to "consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." For the reasons discussed in the remainder of this order, I find that, on balance, transfer (rather than dismissal) is warranted.

[3]In this regard, I reject any implication in the papers that Delaware law must be interpreted by Delaware courts.

relief (D.I. 3, 28, 36).[4] The appropriate avenue for review is an appeal from Judge Story's decision, not duplicative litigation.

10. Both Judge Story and I understand that plaintiffs at bar may still pursue their claims against defendants based on the allegations that Boone (now working for Volt's subsidiary ProcureStaff Technologies, Ltd., a direct competitor of Guidant) cannot avoid using his knowledge of plaintiffs' confidential and proprietary information for the benefit of his new employer, thus breaching both his fiduciary duties as a director and officer of the Delaware plaintiffs and the confidentiality provision of his employment agreement with Corestaff. Defendants acknowledge in the Georgia complaint that Boone, in the course of rendering services to Volt as an employee, "will solicit, or attempt to solicit, current or former Corestaff customers to purchase products or services that Corestaff either sold or provided," and "will hire or solicit the employment of current or former employees or agents of Corestaff or Impellam or its direct and indirect subsidiaries." (D. I. 10, ex. 1 at §§ 44-46) Boone asserts, however, that "[f]ollowing his resignation, [he] deleted all Corestaff-related correspondence from his personal Hotmail account" and "did not retain any tangible items that were, or that contained, Corestaff's confidential information." (*Id.* ¶ 38) The issue of Boone's access to and use of plaintiffs' confidential information is part of the factual underpinnings of the Georgia litigation. It is not clear to me, however, whether the issue has been formally joined.[5]

---

[4]These pending motions include plaintiffs' motions for injunctive relief and a motion for remand to the Court of Chancery.

[5]Counts II, III, V and VI of the complaint at bar all include specific references to Boone's likely use of plaintiffs' confidential information. (D.I. 1, ex. A)

7

11. **Personal jurisdiction.** In determining whether these claims should be resolved in Delaware or dismissed or transferred to Georgia, I must consider the fundamental question of whether this court can exercise personal jurisdiction over the Delaware defendants.

    a. **Boone.** With respect to Boone, plaintiffs argue that his role as an officer or director of the various Delaware corporations serves as a basis for personal jurisdiction pursuant to 10 Del. C. § 3114, the terms of which authorize personal jurisdiction over nonresident directors and officers of a Delaware corporation for suits involving a breach of fiduciary duty. Under Delaware law, "once jurisdiction is obtained pursuant to § 3114, nonresident directors are properly before the court with respect to any claims that are sufficiently related to the cause of action asserted against such directors in their capacity as directors." *N. Amer. Catholic Educational Programming Found. v. Gheewalla*, 2006 WL 2588971, at *1 (Del. Ch. Sept. 1, 2006), *aff'd*, 930 A.2d 92 (Del. 2007); *see also Canadian Commercial Workers Indus. Pension Plan v. Alden*, 2006 WL 456786 at *12 (Del. Ch. Feb. 22, 2006). Although defendants argue in this regard that the conduct complained of was not undertaken in Boone's capacity as an officer or director, thus precluding the application of § 3114, I find that plaintiffs have sufficiently pled to the contrary. More specifically, the complaint relates that Boone, in his capacity as an officer or director of the Delaware plaintiffs, had access to their confidential information; it is this confidential information that may be used to benefit Volt, a direct competitor. I understand that, through discovery, these allegations may be disproven; nonetheless, I find them sufficient to confer upon this court personal jurisdiction over Boone as an officer or director of the Delaware plaintiffs.

b. **Volt.** As to Volt, plaintiffs argue that, although Volt is a New York corporation with no direct business operations in Delaware, it has purposely availed itself of the benefits of Delaware law by incorporating 38 affiliates in Delaware, one of which (Volt Management Corp.) has earned significant revenue through its business in Delaware.[6] According to plaintiffs, these facts demonstrate that Volt, through its Delaware subsidiaries, regularly does business in Delaware, thus demonstrating that Volt has substantial enough contacts in Delaware to satisfy the prerequisites of 10 Del. C. § 3104(c)(4), the Delaware long arm statute. Volt responds to these allegations by asserting that any activities undertaken in Delaware were done so by a "wholly owned indirect subsidiary" of Volt; because there is no evidence of record that Volt controlled the actions of said entity, the latter's activities cannot be attributed to Volt.

c. Pursuant § 3104(c)(4), a court may exercise personal jurisdiction over a defendant where the defendant or its agent "[c]auses tortious injury[7] . . . [and] regularly does or solicits business [in the State], engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State." If a plaintiff is relying on an agency theory for the exercise of personal jurisdiction, the court is required to examine the degree of control which the

---

[6]Plaintiffs assert that Volt Management Corp. generated $2,851,916 in gross revenue from services performed in Delaware, apparently in connection with two Delaware customers. In addition, Volt affiliates employ 105 individuals with Delaware addresses; Volt has one independent contractor working in Delaware; and Volt holds out its Delaware subsidiaries as part of its nationwide marketing and operations. (D.I. 19 at 8)

[7]Breach of fiduciary duty is a tort. *See Hamilton Partners,, L.P. v. England*, 11 A.3d 1180, 1211 (Del. Ch. 2010).

parent exercises over the subsidiary. "'The factors relevant to this determination include the extent of overlap of officers and directors, methods of financing, the division of responsibility for day-to-day management, and the process by which each corporation obtains its business.'" *Reach & Assocs., P.C. v. Dencer*, 269 F. Supp. 2d 497, 507 (D. Del. 2003) (citation omitted). Moreover, plaintiffs "must establish that the activities directed or controlled by [Volt] are the jurisdictional acts of" the Delaware subsidiary. *Id.* Finally, for the court to exercise general personal jurisdiction consistent with due process, the cause of action asserted can be unrelated to the defendant's activities in the forum state, but only so long as the defendant has "continuous and systematic contacts with the forum state." *Cephalon, Inc. v. Watson Pharm., Inc.*, 629 F. Supp. 2d 338, 347 (D. Del. 2009) (citation omitted).

   d. I conclude that plaintiffs have not adduced evidence sufficient to pass muster under § 3104(c)(4). Unlike the facts examined in *Cephalon*, the entity that arguably conducts business in Delaware is not one of the named defendants at bar and, of more significance, the record lacks any indicia of an agency relationship between Volt and its subsidiary (e.g., overlapping officers or directors, or a corporate structure by which the related companies conduct their business in concert). *See* 629 F. Supp. 2d at 343 and 348.

12. **Conclusion.** As discussed, dismissal or transfer can be appropriate where the first-filed rule applies. Having established that Georgia is the first-filed action, that the Georgia and Delaware litigations share a nucleus of operative facts, and that this court does not have jurisdiction over Volt, I conclude that the case at bar should not proceed in Delaware. I further conclude, however, that the concerns raised in plaintiffs'

10

complaint are sufficiently troubling that they should be heard and, therefore, the case is hereby transferred to the Northern District of Georgia.[8]

                                                                                                                   _____
                                                                                                     United States District Judge

---

[8] I recognize that not all of the plaintiffs are parties to the Georgia litigation and that plaintiffs have argued that not all of their corporate entities may be subject to personal jurisdiction in Georgia. However, given the overlapping nature of plaintiff's corporate structure (consistent with plaintiffs' position vis a vis this court's jurisdiction over Volt) and the fact that not all parties may be indispensable parties, I conclude that transfer is the better option than either dismissal or stay.